UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

M.D., individually and on behalf of E.G., a child with a
disability; J.T., individually and on behalf of J.R.T., a
child with a disability; R.L. (parent), individually and on
behalf of R.L. (child), a child with a disability,

        Plaintiffs,

        -v-

NEW YORK CITY DEPARTMENT OF EDUCATION,

        Defendant.

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/14/2018

17-CV-2417 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

      In this action, Plaintiffs J.T. and R.L. seek attorney's fees and costs from the New York

City Department of Education (the "DOE") pursuant to the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3).[1] Plaintiffs now move, pursuant to Rule 56 of

the Federal Rules of Civil Procedure, for summary judgment. (Docket No. 17). Specifically,

J.T. seeks $72,581.50 in fees and $3,005.15 in costs, and R.L seeks $44,805 in fees and

$1,782.92 in costs. Each Plaintiff also seeks "fees on fees" in connection with the bringing of

this action. For the reasons that follow, their motion for fees related to the administrative

proceedings is granted, but their awards are fixed at less than the amounts requested. The Court

defers ruling on the request for fees on fees pending further submissions from the parties.

---

[1]     A third Plaintiff, M.D., settled. (*See* Docket No. 32, at 1). Accordingly, her claims are
dismissed.

## BACKGROUND

The relevant facts, taken from the Complaint and admissible materials submitted in connection with the pending motion, are either undisputed or construed in the light most favorable to the DOE. *See Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 420 (2d Cir. 2018). J.T. and R.L. are the parents of J.R.T. and R.L., respectively, minors who, during the period relevant to this action, were classified as children with disabilities within the meaning of the IDEA. (Docket No. 1 ("Compl.") ¶¶ 7-8; Docket No. 31 ("Pls.' Rule 56.1 Statement") ¶ 3). Acting on their respective child's behalf, each Plaintiff initiated impartial due process hearings alleging that the DOE had failed to provide a "free appropriate public education" within the meaning of the IDEA to the child and seeking appropriate remedies. (Pls.' Rule 56.1 Statement ¶¶ 7, 11., Compl. ¶¶ 16, 20) In each case, J.T. and R.L. obtained at least partial relief through the hearings. (Docket No. 11 ("Answer") ¶¶ 19, 23; Docket No. 52-1 ¶¶ 10, 14). Thereafter, Plaintiffs sued the DOE seeking attorney's fees and costs for each administrative proceeding, as well as attorney's fees and costs associated with bringing this action ("fees on fees"). They now move for summary judgment on those claims.

## APPLICABLE LEGAL PRINCIPLES

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). To that end, the IDEA guarantees children with disabilities and their parents certain procedural rights, including the right to seek relief from local educational agencies at an "impartial due process hearing." *Id.* § 1415(f). A court may award "reasonable attorneys' fees" and costs to a parent who is the "prevailing party" at such a hearing. 20 U.S.C. § 1415(i)(3)(B)(i). Such an award may cover

work performed in connection with the hearing; before the district court; and on appeal from the district court. *See, e.g.*, *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 CIV. 7632 (PAE), 2018 WL 3769972, at *3 (S.D.N.Y. Aug. 9, 2018) (citing cases).

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

In considering a claim for attorney's fees under the IDEA, "a district court must ordinarily make two determinations. It must first determine whether the party seeking the award

is in fact a prevailing party" and, second, whether that party should be awarded attorney's fees and costs "under the appropriate standard." *Mr. L. v. Sloan*, 449 F.3d 405, 407 (2d Cir. 2006). Here, however, there is no dispute that Plaintiffs qualify as "prevailing" parties within the meaning of the IDEA. Thus, the sole question is whether and to what extent Plaintiffs should be awarded fees and costs under the appropriate standard. The DOE contends that the Court should deny Plaintiffs' requests in their entirety because, when seeking a settlement of their claims, they submitted bills to the DOE reflecting both higher total hours and higher hourly rates. (Docket No. 47 ("DOE Mem."), at 23-24). In the alternative, the DOE argues that Plaintiffs should receive less than they seek because their proposed hourly rates and total billable hours are unreasonably high and they did not obtain all the relief they sought at their hearings. (*Id.* at 4-23). The Court will address each of these arguments in turn.

As an initial matter, the Court is unpersuaded by the DOE's argument that Plaintiffs should be denied all relief because they initially requested a larger amount in settlement negotiations than they seek in this action. In settlement negotiations with the DOE, Plaintiffs initially submitted bills reflecting $55,367.58 in total fees and costs for the R.L. matter and $90,476.57 for the J.T. matter. (Docket No. 48 ("Goldman Decl.") at ¶¶ 3-4; *id.* Exh. A at 1; *id.* Exh. B at 1). Those bills reflected each attorney's full billable rates and, in the case of J.T., included time entries for hours billed before January 19, 2016. (*See* Docket No. 19 ("Cuddy Decl."), ¶ 52; Docket No. 20 ("Arkontaky Decl."), ¶¶ 25, 39). In their motion here, Plaintiffs submit bills reflecting substantially discounted rates and with the pre-January 19 time on the J.T. bill "zeroed out" — both changes that Plaintiffs' counsel purportedly made "as a matter of discretion." (Cuddy Decl. ¶ 54-56; Arkontaky Decl. ¶¶ 36-40). Substantial as it may be, the contrast between Plaintiffs' opening settlement demand and their self-imposed haircut here is no

reason to deny their fee requests altogether.  Within the bounds of their ethical obligations, *see Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), counsel negotiating settlement of a fee claim in the shadow of a court's highly discretionary fee-shifting authority may propose (or accept) an amount different than what a court might ultimately award.  Likewise, a party suing for a fee award might reduce the amount sought for reasons of litigation strategy and not because it knows the amount originally sought in settlement negotiations was "inflated."  (DOE Mem. 23).  In any event, whatever strategic considerations shape a party's fee application, once an application is filed the Court's task is to decide it and fix the award in accordance with applicable law.

Thus, the Court turns to what fees and costs are "reasonable."  *Hensley*, 461 U.S. at 433. Because courts are to interpret the IDEA's fee-shifting provision "in consonance" with those of other federal civil rights fee-shifting statutes, *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 73 & n.9 (2d Cir. 2005) (internal quotation marks omitted), the relevant inquiry is well established.  "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate," *Blum v. Stenson*, 465 U.S. 886, 888 (1984), resulting in a figure often referred to as the "lodestar," but which the Second Circuit prefers to call the "presumptively reasonable fee," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).  "Adjustments to that fee then may be made as necessary in the particular case," *Blum*, 465 U.S. at 888, although because the calculation's twin inputs already account for "most, if not all" of the relevant factors, the

presumption that the lodestar represents a reasonable fee award is especially strong, *Perdue*, 559 U.S. at 552-53, and departures from that figure will be "rare," *id.* at 554.

A "reasonable hourly rate" is defined as "the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. In calculating such a rate, a court should "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant." *Id.* Those variables include the so-called *Johnson* factors, to wit:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). A court "need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." *C.D.*, 2018 WL 3769972, at *4 (internal quotation marks omitted). Moreover, in determining the "reasonable hourly rate," district courts have "considerable discretion." *Arbor Hill*, 522 F.3d at 190.

Upon consideration of all the *Johnson* factors, the Court concludes that Plaintiffs' proposed hourly rates — $450 for senior attorneys, $350 for mid-level attorneys, $250 for junior attorneys, and $150 for paralegals — are somewhat excessive. (*See* Cuddy Decl. Ex A at 1; Arkontaky Decl. Ex. A at 1).[2] "[C]ourts should generally use the hourly rates employed in the

---

[2]     Plaintiffs submit declarations purporting to explain that the rates they propose are actually lower than each attorney's respective "sticker price," (Cuddy Decl. ¶¶ 54-55; Arkontaky Decl. ¶¶ 36-37), but they provide insufficient evidence about the context in which those rates were collected (Cuddy Decl. ¶¶ 52; Arkontaky Decl. ¶ 25), and in one instance omit any declaration that fees were collected at those rates in *any* case (Arkontaky Decl. ¶ 25).

district in which the reviewing court sits in calculating the presumptively reasonable fee," *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted), including by taking "judicial notice of the rates awarded in prior cases," *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005). In *K.L. v. Warwick Valley Central School District*, No. 12-CV-6313 (DLC), 2013 WL 4766339 (S.D.N.Y. Sept. 5, 2013), a judge in this District concluded that — as of 2013 — courts in the Southern District "consistently award fees" for such attorneys in a "range of $300 to $400 or $450 per hour." *K.L.*, 2013 WL 4766339, at *7 (collecting cases). More recently, another judge in this District found a slightly higher range of "between $350 and $475 per hour" for "experienced attorneys in IDEA fee-shifting cases." *C.D.*, 2018 WL 3769972, at *6; *see id.* at *6-*7 (awarding $400 per hour to senior attorneys, $300 per hour to an experienced lawyer who began doing IDEA work in 2012, and $125 per hour to experienced paralegals); *B.B. v. N.Y.C. Dep't of Educ.*, No. 17-CV-4255 (VEC), 2018 WL 1229732, at *2 (S.D.N.Y. Mar. 8, 2018) (awarding $350 per hour to an attorney in an IDEA action where "the underlying administrative action involved relatively minimal effort, and involved a brief, uncontested hearing resulting in limited success beyond that conceded by the Defendant"). Based on those data points, and an assessment of the facts of this case, the Court finds that hourly rates of $360 for senior attorneys, $280 for mid-level associates, $200 for junior associates, and (with one exception) $120 for paralegals are reasonable in this case.[3] Further, to the extent that Plaintiffs have not imposed a discount themselves (*compare*

---

Accordingly, the Court declines to rely on Plaintiffs' counsel's "sticker prices" as a starting point in the analysis of a reasonable hourly rate. *See C.D.*, 2018 WL 3769972, at *6 n.9.

[3]      The one exception is for two hours billed by Daisy Cruz. Plaintiffs "bear[] the burden of providing evidence to support [their] fee application, including as to the timekeeper's relevant qualifications," but fail to carry that burden with respect to Daisy Cruz. *C.D.*, 2018 WL 3769972, at *7. In the absence of evidence that a timekeeper "had anything beyond entry-level qualifications," courts "typically award fees at the bottom of the customary fee range." *Id.*

Cuddy Decl. Ex. A at 1, *with* Arkontaky Decl. Ex. A), the Court will compensate for only 50%

of those hourly rates for travel time, in accordance with standard practice. *See C.D.*, 2018 WL

3769972, at *10.

In arriving at those rates, the Court rejects the DOE's arguments for even greater

reductions. The DOE suggests that the second *Johnson* factor — the "novelty and difficulty of

the questions" — deserves special weight, arguing that reasonable hourly rates in this case

should turn primarily on the "uncomplicated and straightforward" nature of the administrative

hearings. (DOE Mem. 5, *see also id.* at 4 n.2, 9-12). "[U]ncomplicated and straightforward"

tasks, however, still require the attention of a skilled attorney, who owes his or her client the

duties of "thoroughness" and "diligence." N.Y. Rules of Prof'l Conduct 1.1(a), 1.3(a).

Moreover, if it is reasonably necessary for an attorney to spend an hour devoted to a particular

task — a question best left, in the first instance, to that attorney's professional judgment — then

that hour must be compensated at the reasonable hourly rate. The Court notes, too, that the

fourth *Johnson* factor focuses on the opportunity cost of an attorney's time, sensibly recognizing

that the market rate *foregone* by an hour spent on a given task does not vary with the task's

complexity. *See Arbor Hill*, 522 F.3d at 186 n.3. In fact, insofar as a reasonable fee must be

"*sufficient to induce* a capable attorney to undertake the representation of a meritorious civil

rights case," *Perdue*, 559 U.S. at 552 (emphasis added), if any of the *Johnson* factors were

deserving of disproportionate weight, the fourth would be a stronger candidate than the second.

The DOE also argues that the Court should essentially adopt the rates awarded in *K.L.*,

quoting at length from Judge Cote's opinion in that case and urging that the award in *K.L.*

---

Thus, for the two hours billed by Daisy Cruz, the Court will apply an hourly rate of $100, which
is at the bottom end of the range for paralegals in this District. *See id.*

represents a reasonable fee "where the impartial hearing below was uncomplicated." (DOE Mem. 7). The *K.L.* decision, however, is five years old. Moreover, in *K.L.*, the parties had reached an "early settlement," 2013 WL 4766339 at *8, which was then "so ordered" by the impartial hearing officer two days later, *id.* at *3. Even if the DOE were correct that Plaintiffs faced "zero opposition from the DOE before and at the impartial hearing[s]" in this case (DOE Mem. 1-2), that would still stand in stark contrast to the pre-hearing settlement in *K.L.* Moreover, construing the facts in the light most favorable to the DOE, it is clear that the DOE's failure to settle either claim before a hearing required Plaintiffs to prepare as though the hearings would be decisive of their allegations — which they were. As the impartial hearing officer noted on the record at R.L.'s hearing, if the DOE believed that its lack of meaningful opposition to R.L.'s request should justify a diminished fee award, it could have dropped its formal opposition to R.L.'s claim. (Docket No. 57 ("Aasen Decl.") Ex. A, at 6-7). Instead, the DOE forced Plaintiffs to litigate both claims in administrative hearings. *Id.* at 7. If, as the DOE argues, "these two cases were entirely indefensible for the DOE," (DOE Mem. 10), there was all the more reason for DOE to settle, rather than litigate, claims they could not meaningfully defend. In light of the purpose of the IDEA's fee-shifting provision, the fact that the DOE's positions were concededly "indefensible" — or, looked at another way, that Plaintiffs' were especially "meritorious," *Perdue*, 559 U.S. at 552 — supports a *higher* hourly rate, not a lower one.

The Court turns, then, to the number of "hours reasonably expended." *Hensley*, 461 U.S. at 433. To arrive at that number, a district court looks to the "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). The court must then exclude "hours that are excessive, redundant, or otherwise unnecessary," *id.* (internal quotation

marks omitted), and may reduce the number of compensable hours "for vagueness, inconsistencies, and other deficiencies in the billing records," *id.* All the same, "[a] request for attorney's fees should not result in a second major litigation," *Hensley*, 461 U.S. at 437, not the least because lengthy fee-award proceedings undermine the purpose of fee-shifting statutes by "increas[ing] the costs to plaintiffs of vindicating their rights," *id.* at 442 (Brennan, J., concurring in part and dissenting in part). Accordingly, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Rather than engage in a painstaking line-item review of each billing entry, in calculating an appropriate reduction of compensable hours "[a] district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks omitted).

In accordance with these standards, the DOE seek a 50% reduction in compensable hours (DOE Mem. 22), arguing that Plaintiffs overstaffed these cases at the administrative level; engaged in excessive and duplicative billing for unnecessary activities, including clerical work; and improperly seek compensation for activities after the favorable administrative decisions. (DOE Mem. 12-22). Based on a review of the parties' submissions and consideration of the DOE's arguments, the Court concludes that a reduction — but a more modest one, of 20% — is appropriate in this case.[4] The Court reaches that conclusion based primarily on its review of

_____

[4] In addition, the Court finds that only one hour of the trip between Plaintiffs' counsel's offices in Auburn, New York, to the proceedings in this district is reasonably compensable, and

Plaintiffs' evidentiary submissions, which support a modest percentage reduction "as a practical means of trimming fat." In addition, the Court is persuaded by certain of the DOE's arguments that Plaintiffs could have staffed and litigated these cases more leanly — but only up to a point. The Court is not persuaded, for example, that Plaintiffs' time entries relating to post-hearing briefing are wholly unreasonable. (DOE Mem. 16-18). As R.L.'s hearing officer pointed out, Plaintiffs' post-hearing briefs were necessary only because the DOE refused to settle what it now concedes were "indefensible" claims, (Aasen Decl. Ex. A, at 6-7; DOE Mem. 10), forcing Plaintiffs to litigate the hearings to a conclusion. If the DOE wanted to avoid a fee award for the time spent producing a post-hearing brief in these "indefensible" cases, it had better options than waiting to oppose Plaintiffs' fee motion. Nevertheless, the Court concludes that Plaintiffs' post-hearing time entries are somewhat excessive, especially given that Plaintiffs' post-hearing briefs repeated material included in earlier filings and that the modest amount of "fat" in those entries, among others, supports a correspondingly modest reduction in compensable hours.

In addition, the Court rejects the DOE's argument that Plaintiffs' post-decision billing entries reflect work that was not "related to achieving prevailing party status" and should therefore be categorically excluded from any fee award. (DOE Mem. 20-21). For that proposition, the DOE cites *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S 598, 600 (2001). But *Buckhannon* held only that a "judicially sanctioned change in the legal relationship of the parties" is necessary to confer prevailing-party status on the winner — not that any resulting fee award must be cut off at the moment prevailing-party status is attained. *Id.* at 605. Indeed, the bulk of persuasive authority

---

will reduce the compensable hours for the two such trips taken in the R.L. case (*see* Cuddy Decl. Ex. A at 11-12) to one hour in each direction. *See C.D.*, 2018 WL 3769972, at *10.

cuts the other way: Generally, post-decision activities that are "useful and of a type ordinarily necessary to secure the final result obtained from the litigation" *are* compensable in the case of a statutory fee award. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (internal quotation marks omitted); *see also Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 620-25 (6th Cir. 2013); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 452 (9th Cir. 2010); *Johnson v. City of Tulsa, Okla.*, 489 F.3d 1089, 1102-11 (10th Cir. 2007). That rule makes good sense in light of the Supreme Court's emphasis on maintaining the "relationship between the amount of the fee awarded and the results obtained," *Hensley*, 461 U.S. at 437 — favorable decisions are often not self-executing, and where a client requires some amount of additional monitoring, enforcement, or litigation to assure that a favorable result amounts to more than a paper victory, a fee award should account for the attorney time reasonably necessary to "secure[] [the plaintiff's] initial success." *Del. Valley*, 478 U.S. at 558.

In this case, counsel's limited post-decision activities — which included correspondence and meetings with their clients and with the DOE, and other minor tasks related to implementing the administrative orders (Cuddy Decl. Ex. A at 16-18; Arkontaky Decl. Ex. A at 16-19) — were largely "useful and of a type ordinarily necessary to secure the final result[s] obtained" in the impartial due process hearings. *Del. Valley*, 478 U.S. at 561. Under the circumstances, it was reasonable for that limited amount of work to be conducted by attorneys and their paralegal staff. The Court therefore rejects the DOE's invitation to exclude all post-decision billing from Plaintiffs' request.

Finally, the DOE argues that Plaintiffs' fee award should be reduced "due to limited success." (DOE Mem. 22). The "most critical factor in determining the reasonableness of a fee award" is indeed "the degree of success obtained by plaintiffs' counsel." *C.D.*, 2018 WL

3769972, at *11 (internal quotation marks omitted) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Kassim v. City of Schenectady*, 415 F.3d 246, 255 (2d Cir. 2005).  Nevertheless, the Court has no trouble rejecting the DOE's argument.  The DOE highlights minor shortfalls in Plaintiffs' efforts to obtain relief for their children (*see* DOE Mem. 22-23), but even when construed in the light most favorable to the DOE, those shortcomings appear pitifully small in comparison to the "quantity and quality of relief obtained" in each administrative decision. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008).  (*See* Docket No. 18 ("Sterne Decl.") Ex. E at 11-12; Sterne Decl. Ex. H at 18-19).  Once again, if anything, the degree of success obtained supports a higher rather than a lower fee award — and, thus, the Court declines to reduce the award on that basis.

That leaves the matter of costs and expenses.  Generally, "[t]he term 'costs' includes costs incurred in connection with work yielding fees covered by a fee award, as well as the specific types of costs set out in 28 U.S.C. § 1920, the general provision governing the taxation of costs in federal court."  *C.D.*, 2018 WL 3769972, at *4.  "Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks omitted); *cf. Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under [42 U.S.C.] § 1988.").  Here, the DOE does not address Plaintiffs' requested costs or expenses, and the Court sees no basis to conclude that they are unreasonable or beyond what attorneys "ordinarily charge[] to their clients."  *LeBlanc-Sternberg*, 143 F.3d at 763. Accordingly, Plaintiffs are awarded their proposed costs in full.

In sum,  the Court will award Plaintiffs a total of $1,782.92 in costs for the R.L matter, along with $27,595.20 in attorney and paralegal fees — representing a 20% discount from their proposed hourly billing rates and proposed billable hours, respectively, except for Nina Aasen's proposed billable travel time (ten hours), which will be reduced to one compensable hour per trip.  The Court will also award Plaintiffs a total of $3,005.15 in costs for the J.T. matter, along with $45,596.96 in attorney and paralegal fees — representing the same discounts in fees and hours as for the R.L. matter, except for the hours attributed to Daisy Cruz, the compensable portion of which (80%, or 1.6 hours) will be awarded at an hourly rate of $100, and the proposed billable travel time attributable to Kerry McGrath (eight hours) and Linda Adair (4.2 hours), which the Court will award at a further 50% discount from Plaintiffs' proposed rates.

## CONCLUSION

For the reasons stated above, R.L. and J.T.'s motion for summary judgment is GRANTED to the extent that it seeks an award of fees and costs related to the underlying administrative proceedings.  In particular, R.L. is awarded a total of $29,378.12 in fees and costs and J.T. is awarded a total of $48,602.11 in fees and costs.

That leaves Plaintiffs' request for fees in connection with the bringing of this action, commonly known as "fees on fees."  (Compl. 5).  After originally informing the Court that they would submit a "final invoice" reflecting any fees on fees with their reply papers (Sterne Decl. ¶ 10), Plaintiffs took it upon themselves to defer once again, "elect[ing] to wait for the Court's decision on the administrative fees," (Docket No. 56 ("Cuddy Reply Decl.") at ¶ 26).[5]  The Court

---

[5]     Although Plaintiffs' delay in seeking fees on fees may have been well intended, considerations of judicial economy and the federal fee-shifting-statutes' strong policy against protracted litigation will generally favor consideration of fees on fees with an award of fees for the underlying proceedings.  Plaintiffs' counsel notes that he delayed submitting documentation for the fees-on-fees request "so as to inform [himself] as to the 'haircut'" he would then

therefore defers ruling on Plaintiffs' motion for summary judgment to the extent that it requests an award of fees on fees. Instead, **within two weeks of the date of this Opinion and Order**, Plaintiffs shall file a supplemental application for any such fees, in the form of a letter not to exceed three pages supported by contemporaneous billing records and other appropriate documentation. The DOE shall file any opposition, in the form of a letter brief not to exceed three pages, **within ten business days of Plaintiffs' submission**.

  The Clerk of Court is directed to terminate Docket No. 17 and M.D. as a party.


  SO ORDERED.

Dated: September 14, 2018
   New York, New York
                _____
                 JESSE M. FURMAN
                United States District Judge

---

proactively apply to the fees-on-fees invoice (Cuddy Reply Decl. ¶ 26), but there is no reason to assume (and the Court does not assume) that the same "haircut" should apply to an underlying fee award and a fees-on-fees award. *Cf. C.D.*, 2018 WL 3769972 at *11 (applying the same "haircut" to the hourly rates, but not the total hours, in the fees-on-fees award as in the underlying fee award); *K.L.*, 2013 WL 4766339, at *13-14 (applying a substantial reduction to the underlying fee award, and awarding no fees on fees at all). An attorney's obligation in seeking fees on fees is the same as with any other fee motion: to exercise "good faith . . . billing judgment" in preparing the request. *Hensley*, 461 U.S. at 434 (internal quotation marks omitted).